May I please the Court, Eamon Dornan from Dornan and Associates, I'm here for the plaintiff appellant in this matter. And this is a challenge to determination of the lower court which both vacated the default judgments previously granted against the remaining defendants and the plaintiff appellant's complaint for lack of jurisdiction. And I say that both the magistrate's report which Mr and Mrs Sweet followed and the lower court's decision did not clearly set out what the court's jurisdiction was to vacate a judgment which had been properly authored, but it appears to be that Rule 64B, where a judgment is void and can be relieved against the party, would control in these circumstances. There was an inquest on damages pending. Yes. And so we've said that in that sense the liability phase, though styled as a default judgment, is not a final order. And if it's not a final order, the district court can revisit parts of it at any time. So why isn't that the answer here and therefore the district court had the authority? Yes, and I have seen other, although this is an unusual procedural process, I have in fairness seen other judgments whereby the lower court did just that. It vacated the default and then referred to the magistrate. But in that case the plaintiffs were issued with an order to show cause why the vacation shouldn't occur. And there's also that in those very circumstances a court can decide there's no just reason for delaying entry of final judgment on the liability and can direct it. But that's not what happened here. So to the extent you're telling us the district court didn't have authority, what's the basis for that argument? Well, I think my argument really is that it wasn't clear what the court's authority was. But if it has exercised that jurisdiction under Rule 64B, then respectfully this is the standard of review as de novo because it goes to jurisdiction rather than just the person. The absence of personal. Yes. Tell us why you think that decision is erroneous. Well, I say I believe that that's erroneous because the plaintiff at the very least had established a prima facie case in relation to jurisdiction. He had averred that the defendants had an office in New York, had effectively taken the essential decisions from New York, that the controlling employment contract had a New York address, and that— You mean the contract had a New York address. I thought it was all negotiated abroad, provided it was executed out of New York. I didn't see what connection it had to New York. What was there? It was negotiated in Minneapolis. And the address for AMC, sorry, the Assent Medical Corporation, the first name defendant, is a New York address. And at the—unfortunately, it's not exhibited here, but at the bottom of the employment contract is AMC's contact details. Corporations that were hiring him were in Oman, and he was to perform work in Oman. Is that right? Yes, Your Honor, but Assent Medical Corporation was the controlling employer, and we say, and it's assumed at least for the purposes of the lower court's decision, that AMC, the American corporation, and the Omani company are alter egos of each other. I'm not saying that this address for—it wasn't a New York corporation though, right? No, no. It wasn't a New York— No, none of them are. What's the reason? Why is that sufficient to confer personal jurisdiction? Because of the connections with New York now. Now, there is a choice of law provision in the contract. Right, but New York has said that choice of law provision by itself is insufficient to confer personal jurisdiction. Yes, absolutely. And I agree, but it is a significant factor according to the circuit's jurisprudence. And unfortunately, in this case, both the magistrate and the district court judge gave no weight whatsoever to the choice of law provision. Now, there must have been, we would expect, some reason for the parties, in particular the companies, to insert a New York choice of law. A choice of law provision in the contract doesn't—falls far short of being a consent to personal jurisdiction, where all the other indicators were pointing to Oman or Minneapolis. And we had AMC being a Delaware corporation, where its U.S. head office was in Minneapolis. The district court and the magistrate judge did a very careful analysis and demonstrated pretty persuasively that the relationship with New York was insufficient to sustain personal jurisdiction over the defendants. What is the—are you saying the choice of law provision, that's the main connection with New York that was adequate to demonstrate that the magistrate judge was incorrect? No, it's not dispositive on its own, but I say that it wasn't given any weight whatsoever. And that in connection with the rest of the factors, namely that all of the American companies, all of the U.S. companies, had operated from a New York address, that the decision-making, effectively, had taken place from New York by the directors and specifically Peggy Farley, who was a director, but she's no longer a defendant in this action, and that there had been some sales and operations in New York. Ascent Medical Corporation had advertised and still advertised itself as a New York—with a New York address and as the sales arm of the Omani company. So it was more, Your Honor, more than just the choice of law provision, but there were also other contacts with New York, which we say should have grounded general jurisdiction in New York. And Minneapolis, in effect, doesn't have any more connections—or this case doesn't have any more connections with Minneapolis, which had at least certainly registered with the FDA as a U.S. head office, but that was at the time when the prior CEO lived in Minneapolis. So certainly there seems to be something of an amorphous shift. We've kept you past your time, but let me ask you so we don't have to look for it. In the record, where is the line in the contract about the address being New York? Can you just help us find it? Unfortunately, Your Honor, I didn't exhibit the contract. I do— And it's not part of the record, right? It should be in the record. Help me out. If I can. I think it's in the— I believe it's in the docket. It would be attached to the affidavit of Karen Hood. That's docket number 45. Sorry. You're looking at the docket sheet? Yeah. It's not in the appendix. No, no, no. Let me raise one other question because it seems to me there's probably no subject matter jurisdiction in this case anyway. And if I'm wrong, I'd like to be corrected. It's a diversity case, right? Yes. And the plaintiff, you say, is a resident of the county of Antrim in Northern Ireland. Is the plaintiff a citizen of any state of the United States? No. So the plaintiff is an alien and you've got at least two business entities who are defendants that on the face of it, the two Omani items, would appear to be aliens as well, right? That's correct, Your Honor, yes. And so isn't it the case that if you have aliens on both sides of the caption, there's no diversity or alienage jurisdiction, I think, under the Venzolana case? Yes, but it's the remaining defendants who are U.S. corporations. The remaining defendants are registered in Dallaware, but we're respectfully seeking to assert either general jurisdiction or specific jurisdiction. I'm not sure it's right, but I see it anyway. It may be right. All right. Thank you. Thank you very much. We'll take the matter under advisement. Your adversary is submitted. The last case on our docket is also on submission, so we stand adjourned.